No. 25-11170-JJ

In the
United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JAVIER MARES,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 8:24-CR-33-WFJ-TGW-1

## BRIEF OF THE UNITED STATES

GREGORY W. KEHOE
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

HOLLY L. GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division
Florida Bar No. 98960
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

May 15, 2026

# Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Statement Regarding Oral Argument ................................................................... i

Table of Contents ................................................................................................ ii

Table of Citations .............................................................................................. iv

Statement of Jurisdiction ................................................................................. vii

Statement of the Issues ...................................................................................... 1

Statement of the Case ........................................................................................ 1

    *Course of Proceedings* ................................................................................. 2

    *Statement of the Facts* .................................................................................. 2

        I.      Mares's Drug and Firearm Offenses ................................... 2

        II.     Agent Cain's Trial Testimony ............................................ 5

    *Scope and Standard of Review* ................................................................... 7

Summary of the Argument ................................................................................. 8

Argument and Citations of Authority ............................................................. 10

        I.      Sufficient evidence supports the jury's finding that
               Mares possessed the drugs and drug paraphernalia
               found in the locked safe, in his office, under his desk .......... 10

        II.     The district court did not abuse its discretion in denying
               Mares's mistrial motion ..................................................... 14

        III.    Mares is not entitled to relief under plain-error review
               on his claim that the case agent gave improper opinion
               testimony ............................................................................ 17

IV.      Mares's trial counsel did not provide ineffective assistance by not objecting to admissible evidence, but, if that evidence was not admissible, Mares's ineffective-assistance claim is not ripe for review .................................. 21

Conclusion.................................................................................. 23

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

## Table of Citations

**Cases**

*Devier v. Zant,*
   3 F.3d 1445 (11th Cir. 1993) ................................................................ 22

*Greer v. United States,*
   593 U.S. 503 (2021) ............................................................................ 8

*Lovett v. State of Fla.,*
   627 F.2d 706 (5th Cir. 1980) .............................................................. 22

*United States v. Abraham,*
   386 F.3d 1033 (11th Cir. 2004) ........................................................... 7

*United States v. Beckles,*
   565 F.3d 832 (11th Cir. 2009) ............................................................ 12

*United States v. Bender,*
   290 F.3d 1279 (11th Cir. 2002) ..................................................... 8, 22

*United States v. Bird,*
   79 F.4th 1344 (11th Cir. 2023) ............................................................ 7

*United States v. Clark,*
   710 F. App'x 418 (11th Cir. 2017) ..................................................... 18

*\*United States v. Cremades,*
   160 F.4th 1296 (11th Cir. 2025) ........................................ 7, 11, 12, 14

*United States v. Delgado,*
   56 F.3d 1357 (11th Cir. 1995) ............................................................ 17

*\*United States v. Elliott,*
   849 F.2d 554 (11th Cir. 1988) ............................................................ 18

*United States v. Gallardo,*
   977 F.3d 1126 (11th Cir. 2020) .......................................................... 16

*United States v. Hamilton,*
   722 F. App'x 359 (5th Cir. 2018) ....................................................... 13

*United States v. Harper*,
934 F.3d 524 (7th Cir. 2019) ...................................................................... 13

*United States v. Harris*,
886 F.3d 1120 (11th Cir. 2018) ..................................................................... 8

*United States v. Hawkins*,
934 F.3d 1251 (11th Cir. 2019) ..............................................................19, 20

*United States v. Hughes*,
840 F.3d 1368 (11th Cir. 2016) ................................................................... 14

*United States v. Jiminez*,
564 F.3d 1280 (11th Cir. 2009) ................................................................... 15

*United States v. Lejarde-Rada*,
319 F.3d 1288 (11th Cir. 2003) ................................................................... 20

*United States v. Lewis*,
524 F.2d 991 (5th Cir. 1975) ...................................................................... 19

*United States v. Marszalkowski*,
669 F.2d 655 (11th Cir. 1982) .................................................................... 12

*United States v. McDonald*,
166 F.4th 440 (4th Cir. 2026) ..................................................................... 18

*United States v. McLean*,
138 F.3d 1398 (11th Cir. 1998) ................................................................... 15

*United States v. Morales*,
868 F.2d 1562 (11th Cir. 1989) ................................................................... 12

*United States v. Newsome*,
475 F.3d 1221 (11th Cir. 2007) ................................................................... 16

*United States v. Ochoa*,
941 F.3d 1074 (11th Cir. 2019) .............................................................12, 13

*United States v. Perry*,
14 F.4th 1253 (11th Cir. 2021) ...............................................................20, 21

*United States v. Rojas*,
   537 F.2d 216 (5th Cir. 1976) ..................................................................... 16

*United States v. Toyer*,
   274 F. App'x 844 (11th Cir. 2008) ............................................................ 23

**Statutes**

18 U.S.C. § 922(g)(1) ................................................................................. 2

18 U.S.C. § 924(c) ..................................................................................... 2

18 U.S.C. § 3231 ..................................................................................... vii

21 U.S.C. § 841(a) ..................................................................................... 2

28 U.S.C. § 1291 ..................................................................................... vii

**Rules**

Fed. R. App. P. 4(b) ................................................................................ vii

Fed. R. Crim. P. 29 ................................................................................... 2

Fed. R. Evid. P. 404(b) ............................................................................ 15

# Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered judgment against Javier Mares on April 9, 2025, Doc. 69, and Mares timely filed a notice of appeal the same day, Doc. 71. *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

## Statement of the Issues

I.      Does sufficient evidence support the jury's finding that Mares possessed the drugs found in the locked safe in his office, under his desk?

II.     Did the district court abuse its discretion in denying Mares's mistrial motion when it gave a curative instruction after sustaining Mares's objection?

III.    Is Mares entitled to relief under plain-error review on his claim that the case agent's testimony that he believed that Mares was his brother's source of supply was improper opinion testimony?

IV.     Did Mares's trial counsel provide ineffective assistance by not objecting to admissible evidence, or if that evidence was not admissible, is Mares's ineffective-assistance claim ripe for review?

## Statement of the Case

A DEA investigation into Javier Mares and his brother Fabian resulted in the search of an auto shop rented by Mares.[1] During the search, in Mares's office, under his desk, agents found a locked safe filled with packaged methamphetamine, cocaine, and marijuana. Agents also discovered a loaded pistol in Mares's desk drawer. A jury found Mares guilty of drug and firearm

---

[1]To avoid confusion, we refer to Javier Mares as Mares and to Fabian Mares as Fabian.

charges. In this direct criminal appeal, Mares challenges his convictions.

## *Course of Proceedings*

A grand jury returned an indictment charging Mares with having possessed 50 grams or more of methamphetamine and a detectable amount of cocaine with the intent to distribute those controlled substances, in violation of 21 U.S.C. § 841(a) (count one); having possessed a firearm in furtherance of the drug-trafficking crime charged in count one, in violation of 18 U.S.C. § 924(c) (count two); and having possessed a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (count three). Doc. 1.

Mares pleaded not guilty and proceeded to trial. Docs. 82–83. At the close of the United States's case, and again at the close of all evidence, Mares moved for judgment of acquittal under Fed. R. Crim. P. 29, which the district court denied. Doc. 83 at 96. The jury then found Mares guilty, Doc. 45, and the district court imposed a 220-month sentence, Doc. 69.

## *Statement of the Facts*

### I.   Mares's Drug and Firearm Offenses

During an investigation into Mares and his brother Fabian, DEA agents used a confidential informant to buy drugs from Fabian three times. Doc. 83 at 4, 14, 45. During each of these transactions, Fabian would travel to or from Mares's auto shop, leading the agents to believe that was where the drugs were

being kept. Doc. 83 at 46.

Then the confidential informant again reached out to Fabian, again. Doc. 83 at 47. After that contact, Mares arrived at the auto shop, and, soon after, Fabian left the shop and drove toward the agreed-on meeting location. *Id.* at 48. But when law-enforcement officers attempted to stop him, he threw a sock containing methamphetamine and fentanyl out the window. *Id.* at 78. (Fabian was arrested but was released on bond. *Id.* at 78–79. He is now a fugitive whose current whereabouts are unknown to the United States. *See id.* at 79.)

DEA agents then executed a search warrant at Mares's auto shop. *Id.* at 5, 48. Mares and a "juvenile male" were the only people inside the shop. *Id.* at 49. That young man fled but later returned. *Id.*

Agents Brandon Cain and Ryan Brothers searched the shop's office. Doc. 83 at 49. Throughout it they found receipts, mail, and other documents bearing Mares's name. *Id.* at 50–53; Gov't Ex. 3. Photographs of Mares and his family sat on the desk. Doc. 83 at 50; Gov't Ex. 3. As did a personal-use amount of cocaine. Doc. 83 at 65–66; Gov't Ex. 7B. In the top right drawer of that desk, Agent Cain located a .45 caliber pistol with a loaded magazine. Doc. 83 at 55–56; Gov't Exs. 4B, 11, 12. The pistol sat atop a Crown Royal bag, next to a collection of bills. *Id.* at 55–56; Gov't Exs. 4B, D.

Agent Brothers located a small safe under the desk. Doc. 83 at 9; Gov't Ex. 2A. It was locked, but the agents pried it open. Doc. 83 at 10–11. In the safe, Agent Brothers found a plastic bag containing 381 grams of methamphetamine, a plastic bag containing 13 grams of cocaine, and a plastic bag containing marijuana. Doc. 83 at 11, 67; Gov't Exs. 2C, 2E. Mares had left a fingerprint on the methamphetamine bag. Doc. 83 at 32–33.

Agent Cain read Mares his *Miranda* rights, and Mares agreed to speak to him. Doc. 83 at 59. Mares reported that he had rented the auto shop facility for seven years. *Id*. He admitted that the office and the desk in it were his, but he claimed that four other people had access to the office space. *Id.* He said that he knew nothing about the safe under his desk—including what it contained and the code. *Id*. He also admitted that the bills in the desk drawer belonged to him, but he denied knowing anything about the firearm sitting next to them. *Id*. at 60. When asked about a "grenade" launcher found in a closet outside the office, he explained that it was a launcher for firecrackers or flares. *Id*. at 55, 60.

Mares had previously been convicted of a felony, and he knew that he had been convicted of a felony and could not possess a firearm or ammunition. Doc. 83 at 90–91. The pistol and ammunition discovered during the search had traveled in foreign or interstate commerce. *Id*. at 92.

## II.  Agent Cain's Trial Testimony

In response to the prosecutor's asking how the investigation began, Agent Cain testified that a task force officer had developed a source who could purchase drug from Fabian. Doc. 83 at 45. Agent Cain then explained that he and that other officer were "familiar with Fabian Mares being the brother of Javier Mares." *Id*. He continued, "Javier Mares we were familiar with from previous investigations where he had popped up as a large-scale narcotics distributor." *Id*. Defense counsel objected and asked to approach. *Id*. The court responded, "The objection is sustained. Just disregard the statement. It's not evidence and is stricken." *Id*. (Defense counsel later moved for a mistrial and the court denied that motion. *Id*. at 101. The court asked defense counsel if he wanted any additional curative instruction, and defense counsel responded that he would prefer not to highlight it further. *Id*.)

Defense counsel asked Agent Cain about the search-warrant application, getting Agent Cain to agree that his application mentioned Fabian 39 times. Doc. 83 at 77. Defense counsel then said, "Now, you told the jury earlier in the response to the Prosecutor's question that the two targets of this investigation, the reason why you sought that search warrant is because Fabian Mares and Javier Mares were your targets." *Id*. He asked Agent Cain to "tell the jury exactly how many times [Mares's] name is mentioned in that search

5

warrant application." *Id.* Agent Cain responded that it probably isn't. *Id.*

Defense counsel also asked Agent Cain about his statements in the application about Fabian's relationship with the auto shop. Doc. 83 at 79–81. He asked Agent Cain, "In that search warrant, do you recall telling the judge who signed it in that application for that search warrant that you believed Fabian Mares stashed narcotics in the bays at the location where Mr. Mares had his business?" *Id.* at 79. Agent Cain said that was probably accurate. *Id.* Defense counsel then asked Agent Cain whether he had said that Fabian "controlled those bays, the west end of those bays for his drug-trafficking business." *Id.* After having his recollection refreshed by the application, Agent Cain said, "That's where he stores dope, and that's where he has access and controls them all so, yes, in conjunction with his brother Javier Mares." *Id.* at 81. Defense counsel rejoined, "That was not in your application for a search warrant?" *Id.* "You are correct. It was not," Agent Cain responded. *Id.*

Defense counsel also elicited testimony that Fabian had been arrested but had bonded out and that Agent Cain did not know where Fabian was. Doc. 83 at 78–79. And defense counsel asked Agent Cain how many times the agent had mentioned Fabian's name during the grand-jury proceedings that resulted in Mares's indictment. Doc. 83 at 83. Agent Cain responded that it was possible that he had not mentioned Fabian. *Id.*

6

On redirect, the prosecutor asked Agent Cain, "Going into this investigation, did you believe Javier Mares was a drug dealer?" Doc. 83 at 89. Agent Cain responded, "Yes, ma'am, source of supply." *Id.* Agent Cain then explained that a source of supply is "an individual that has larger amounts of narcotics, sources to individuals that are selling them or distributing them at a lower level." *Id.* The prosecutor then asked, "And in this case based on the evidence that you saw, who did you believe to be supplying Fabian Mares with drugs?" *Id.* Agent Cain answered, "Javier Mares." *Id.*

### Scope and Standard of Review

I.     This Court "review[s] de novo a challenge to the sufficiency of the evidence to determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Cremades*, 160 F.4th 1296, 1301 (11th Cir. 2025) (internal quotation marks omitted). In doing so, this Court views "the evidence in the light most favorable to the verdict and draw[s] all reasonable inferences and credibility choices in the verdict's favor." *United States v. Bird*, 79 F.4th 1344, 1348 (11th Cir. 2023) (internal quotation marks omitted).

II.    This Court "review[s] the district court's denial of a motion for a mistrial for abuse of discretion." *United States v. Abraham*, 386 F.3d 1033, 1036 (11th Cir. 2004).

III.    "[W]hen a party raises a claim of evidentiary error for the first time on appeal," this Court "reviews it for plain error only." *United States v. Harris*, 886 F.3d 1120, 1127 (11th Cir. 2018). Plain-error review requires a showing that (1) there was an error; (2) it was plain; (3) it affected substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* The party asserting error "has the burden of establishing each of the four requirements for plain-error relief." *Greer v. United States*, 593 U.S. 503, 508 (2021).

IV.    This Court "will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).

## Summary of the Argument

I.    Based on drugs found in a locked safe under his desk and a pistol found in the desk drawer, the jury found Mares guilty of possessing methamphetamine and cocaine with the intent to distribute it, possessing a firearm in furtherance of that drug-trafficking crime, and possessing a firearm as a convicted felon. On appeal, Mares does not challenge the sufficiency of the evidence for his felon-in-possession conviction. But he challenges the sufficiency of the evidence supporting his other convictions, arguing that there

was no evidence that he had possessed the drugs found in the locked safe under his desk.

That argument fails. Constructive possession can be proven circumstantially through evidence of the defendant's ownership or control over the premises where the item is found. Here, Mares had ownership over the premises where the drugs were found. The drugs were found in a locked safe under Mares's desk, in his office, in a facility that he leased. And, although he told a DEA agent that he knew nothing about the safe—including anything about its contents or its combination—the jury was allowed to disbelieve that statement and conclude that the opposite was true. This Court should not disturb the jury's verdict.

II.     The district court did not abuse its discretion in denying Mares's mistrial motion. Defense counsel objected to Agent Cain's testimony that he was familiar with Mares "from previous investigations where he had popped up as a large-scale narcotics distributor." The court sustained that objection, but it needn't have. That testimony explained how the investigation began, so it was neither improper prior-bad-acts evidence nor hearsay. In any case, the court ordered the jury to disregard Agent Cain's statement. That cured any potential prejudice, making a mistrial unnecessary.

III.    Mares is not entitled to relief under plain-error review on his claim

that Agent Cain gave improper opinion testimony. Agent Cain testified that he believed that Mares was his brother's source of supply. That testimony, based on Agent Cain's first-hand knowledge, was proper opinion testimony. But even if it were not, the district court still did not plainly err by allowing it because defense counsel put Agent Cain's belief at issue. So he opened the door for the prosecutor to elicit testimony to correct the false implication that Agent Cain did not believe that Mares was involved in Fabian's drug dealings and that Mares was being prosecuted only because Fabian had fled.

IV. Mares's trial counsel did not provide ineffective assistance by not objecting to Agent Cain's testimony that he believed Mares was Fabian's drug supplier. As discussed above, that evidence was admissible. But if it weren't, Mares's ineffective-assistance claim is not ripe for review. A failure to object could be ineffective assistance of counsel or it could be an appropriate trial strategy. Although the record suggests the latter, it is not sufficiently developed for appellate review.

## Argument and Citations of Authority

### I. Sufficient evidence supports the jury's finding that Mares possessed the drugs and drug paraphernalia found in the locked safe, in his office, under his desk.

Mares's sufficiency challenge fails. He concedes that the evidence sufficed to show that he had possessed the loaded pistol found in his desk

drawer, but he argues that the evidence did not prove beyond a reasonable doubt that he had possessed the drugs found in the safe under his desk. He thus argues that the district court should have granted a judgment of acquittal on counts one and two. But for this Court to overturn his guilty, Mares had to show that no reasonable construction of the evidence supports the jury's finding beyond a reasonable doubt.[2] *See United States v. Cremades*, 160 F.4th 1296, 1301 (11th Cir. 2025) (this Court "will not overturn a guilty verdict if any reasonable construction of the evidence supports the jury's finding beyond a reasonable doubt" (internal quotation marks omitted)). Mares had not made that showing here. The evidence presented at trial was enough—more than enough—for a jury to find that he had possessed the drugs found in the safe. Thus, the district court correctly denied his motion for a judgment of acquittal.

Possession may be actual or constructive. *Cremades*, 160 F.4th at 1302. "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise

---

[2]Mares suggests that his trial counsel performed ineffectively because he failed to adequately preserve his sufficiency challenge. Mares's brief at 35–37. Not so. Defense counsel said, "[N]o juror could find the defendant guilty of Counts 1, 2, or 3 for the reasons that I have argued during the course of the trial." Doc. 83 at 96. Throughout trial, defense counsel argued that there was no evidence linking Mares to the drugs and firearm found in his office. *See, e.g.*, Doc. 82 at 84–85 ("The problem in this case for the government based on the evidence is that there just isn't any as to Javier Mares."). Thus, trial counsel preserved the sufficiency challenge Mares raises on appeal.

dominion or control." *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009). A defendant's constructive possession of an item may be proven circumstantially by the defendant's ownership or control over the premises where the item is found. *United States v. Marszalkowski*, 669 F.2d 655, 662 (11th Cir. 1982); *see also Cremades*, 160 F.4th at 1301 ("[O]f course, the law does not look down on circumstantial evidence.").

Here, the evidence established that Mares had ownership and control over the office where the drugs were found. The jury heard that Mares admitted that he had been renting the auto shop for seven years and that the office and the desk in it were his. Doc. 83 at 59. And the jury heard and saw that the office contained photographs of Mares and his family and documents bearing Mares's name. *Id*. at 50–53; Gov't Ex. 3.

That evidence sufficed for the jury to find that Mares had exercised dominion and control over the office and, by extension, that he constructively possessed the drugs found under his desk there. *See United States v. Ochoa*, 941 F.3d 1074, 1105 (11th Cir. 2019) (evidence that bedroom belonged to defendant allowed jury to conclude that he "exercised dominion and control over that bedroom, which in turn allowed the jury to infer he constructively possessed the items, including the ammunition, found therein"); *United States v. Morales*, 868 F.2d 1562, 1573 (11th Cir. 1989) (defendant who leased

apartment had constructive possession over drugs found in it because he had dominion and control over premises). That's so even though other people apparently had access to the office. *See Ochoa*, 941 F.3d at 1105.

Mares has not shown otherwise. He agrees that constructive possession can be shown through dominion and control over a premises where drugs are found. *See* Mares's brief at 43. But he argues that his case is different because the drugs were in a locked safe to which he did not have the combination. *See id*. at 41–43. And he argues that the evidence supports the conclusion that the drugs belonged to Fabian or the juvenile. *See id.* at 43. Those arguments fail.

To start, the evidence supported a finding that Mares had access to the items in the safe. First, the safe was in his office, under his desk, Doc. 83 at 9, so the jury could infer that he could access it. *See United States v. Harper*, 934 F.3d 524, 528–29 (7th Cir. 2019) ("[W]hen a defendant has close, physical contact with a box containing a gun, its locked status does not negate possession of its contents."). Second, his fingerprint was found on the bag in the safe, Doc. 83 at 32–33, which also supports that he could access the safe. *See United States v. Hamilton*, 722 F. App'x 359, 360 (5th Cir. 2018) (evidence that defendant's fingerprints were on firearm and ammunition in locked gun safe showed that he could access them). And finally, Mares told Agent Cain that he "didn't know anything about [the safe] or what was in it and did not

know the code to it," Doc. 83 at 59, and the jury was free to disbelieve that statement and concluded that the opposite was true. *See United States v. Hughes*, 840 F.3d 1368, 1385 (11th Cir. 2016) (jury could consider defendant's false exculpatory statements upon his arrest as substantive evidence of guilt).

And even if the evidence would support the conclusion that the drugs belonged to Fabian or the young man—it doesn't—that's not enough for Mares to succeed on a sufficiency challenge. "The evidence does not have to completely foreclose the defendant's innocent explanations, nor does it have to exclude every reasonable hypothesis because a jury is free to choose among the reasonable constructions of the evidence." *Cremades*, 160 F.4th at 1301 (internal quotation marks omitted). Moreover, even if the drugs belonged to Fabian or the young man, Mares could still have jointly possessed them. It's unbelievable that Mares would not have known about the contents of a safe sitting at his feet; the jury surely was not required to accept that premise.

In sum, a reasonable jury could have found Mares's guilt beyond a reasonable doubt. Thus, this Court should not disturb the jury's verdict.

## II.    The district court did not abuse its discretion in denying Mares's mistrial motion.

Mares has not shown that the district court abused its discretion by denying his mistrial motion. He argues that Agent Cain's testimony that he

and another officer were familiar with "Javier Mares . . . from previous investigations where he had popped up as a large-scale narcotics distributor" required a mistrial because it was improper opinion testimony, improper hearsay testimony, and inadmissible Rule 404(b) evidence. Mares's brief at 48. He is wrong. Even though the district court sustained Mares's objection and ordered that testimony stricken, the testimony was admissible. But even if it weren't, the court still did not abuse its discretion by denying a mistrial.

First, this testimony was admissible. Contrary to Mares's assertion, Agent Cain did not opine that Mares was a drug distributor. He said he was familiar with Mares because he "had popped up as a large-scale narcotics distributor" in other investigations. That's a fact; not an opinion. And because that testimony explained how the investigation leading to the charges in this case began, it was not subject to Rule 404(b). *See United States v. McLean*, 138 F.3d 1398, 1404 (11th Cir. 1998) (evidence that explained why defendant was target of government's investigation was inextricably intertwined and thus not subject to Rule 404(b)). Finally, we do not know the basis of Agent Cain's knowledge, but, even if it were an out-of-court witness's statement, his testimony would not be hearsay because it was offered to explain why the investigation started, not for the truth of the matter asserted. *See United States v. Jiminez*, 564 F.3d 1280, 1288 (11th Cir. 2009) (out-of-court statements are not

hearsay if they are relevant to explain impetus of government investigation). Because the testimony was admissible, the district court did not abuse its discretion by denying Mares's mistrial motion.

Still, even if Agent Cain's testimony were inadmissible, that does not make a mistrial mandatory. "A defendant is entitled to a mistrial only if he shows substantial prejudice, meaning that it is reasonably probable that, but for the alleged error, the outcome of the trial would have been different." *United States v. Gallardo*, 977 F.3d 1126, 1138 (11th Cir. 2020). This Court makes "this determination in the context of the entire trial and in light of any curative instruction." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). "When the district court gives a curative instruction, [this Court] presume[s] that the jury followed it," and "will reverse only if the objected-to testimony was so prejudicial that its harm was incurable." *Gallardo*, 977 F.3d at 1138; *see also United States v. Rojas*, 537 F.2d 216, 222 (5th Cir. 1976) ("The general rule is that striking erroneously admitted evidence and admonishing the jury to disregard it serves to cure the error.").

Here, the district court admonished the jury to disregard Agent Cain's statement that Mares was known "as a large-scale narcotics distributor" because it was not evidence and is stricken. Doc. 83 at 45. And evidence of extrinsic drug offenses is not so prejudicial as to be incurable by the court's

instruction. *See United States v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995) ("[E]xtrinsic drug offenses do not tend to incite a jury to an irrational decision."). That's especially so because, contrary to Mares's assertion, the evidence against him was strong. *See* Argument § I. Thus, the district court's instruction negated any prejudice.

For these reasons, Mares has not shown that Agent Cain's stricken statement substantially prejudiced him. Thus, he has not shown that the district court abused its discretion by denying his mistrial motion. He is entitled to no relief on this basis.

### III. Mares is not entitled to relief under plain-error review on his claim that the case agent gave improper opinion testimony.

Mares wrongly argues that the district court plainly erred by allowing Agent Cain to testify on redirect that he believed that Mares was the source of Fabian's drug supply. *See* Mares's brief at 50–53. Mares asserts that Agent Cain invaded the province of the jury by telling it that he believed that Mares was guilty and by telling the jury what inference it should draw from the evidence. *Id.* at 51. But Agent Cain did not testify that he believed Mares was guilty of the charged crimes. Although Mares being a source of supply would make it more likely that Mares committed the charged crimes, that was not an ultimate issue the jury had to find. And Agent Cain, who participated in the

search and Mares's interview, could give lay-opinion testimony about Mares's role in the drug operation, based on his first-hand observations. *See United States v. Clark*, 710 F. App'x 418, 422 (11th Cir. 2017) (agent's testimony that defendant was acting as lookout during drug transaction, which was based on his perception of defendant's actions, was admissible lay-opinion testimony).

And, in any event, this Court must view Agent Cain's testimony on redirect against the testimony that defense counsel elicited on cross-examination. That's because the district court may allow the introduction of otherwise inadmissible evidence on redirect "to clarify what was elicited on cross-examination." *See United States v. Elliott*, 849 F.2d 554, 559 (11th Cir. 1988); *see also United States v. McDonald*, 166 F.4th 440, 450 (4th Cir. 2026) ("A party 'open[s] the door' to admitting the other side's otherwise inadmissible evidence when the party creates a misleading impression of factual circumstances.").

When viewed in context, the district court did not plainly err in allowing the challenged testimony. Defense counsel elicited testimony that Agent Cain mention Fabian 39 times in the search-warrant application but did not mention Mares and that, at the time of the application, Agent Cain believed that Fabian was storing *his* drugs at the auto shop. Doc. 83 at 77, 79. Defense counsel also elicited testimony that Fabian was unavailable for prosecution, and that Agent

Cain had not mentioned Fabian when securing Mares's indictment. Doc. 83 at 78–79, 83. That testimony insinuated that Agent Cain did not believe that Mares was involved in Fabian's drug scheme and that the United States prosecuted Mares only because Fabian was no longer available, as defense counsel argued in closing. *See* Doc. 83 at 118 (arguing that Mares was not mentioned in search-warrant affidavit because he was not the target of the investigation and that Mares "only gets stuck holding the bag because they find a fingerprint on a baggy, nothing else, and Fabian is gone[,] … and someone has got to take the hit for it"). The prosecutor was allowed to negate that insinuation through Agent Cain testimony on redirect. *Cf. United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975) (holding that defendant could not complain on appeal about testimony that "[t]aken in context … was merely designed to correct the defense's insinuation during cross-examination of the witness"). Thus, the district court did not plainly err by allowing this testimony.

Mares has not shown otherwise. *United States v. Hawkins*, 934 F.3d 1251 (11th Cir. 2019), on which he relies, does not involve redirect testimony aimed at correcting a false insinuation raised on cross-examination. And, although *Hawkins* holds that a case agent cannot explain to the jury what inference to draw from the evidence, *id.* at 1265, that's not what Agent Cain was doing. Rather, he was setting the record straight about his belief, which Mares had

19

put at issue. Thus, *Hawkins* is not on point, so Mares has not satisfied his burden to show plain error. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

And he falters at the third prong, too. Under that prong, he had to show that there is a reasonable probability that, but for the challenged testimony, the outcome would have been different. *United States v. Perry*, 14 F.4th 1253, 1272 (11th Cir. 2021). To that end, he argues that the evidence was "woefully lacking." Mares's brief at 53. But, as explained above, the evidence against him, though circumstantial, was compelling. And the district court instructed the jury that it did not have to believe any witness's testimony, including opinion testimony. *See* Doc. 83 at 137–39. Given those instructions and that there was more than enough evidence to convict Mares without Agent Cain's challenged testimony, any error in admitting that testimony did not prejudice Mares's substantial rights. *See Perry*, 14 F.4th at 1268–71 (no prejudice to defendant's substantial rights from agent's lay-opinion testimony because instructions informed jury that agent's testimony "need not be accepted" and there was more than enough evidence to convicted defendant "without consideration of any of the improper opinion testimony").

And, finally, as in *Perry*, Mares falters at prong four. In *Perry*, this Court held that the defendant had not shown that the error in admitting improper

20

opinion testimony seriously affected the fairness, integrity, or public reputation of judicial proceedings such that this Court should exercise its discretion to correct it. *Id.* at 1272. This Court explained that there was "sufficient evidence of [the] defendant's knowing and willful involvement in a long-term drug conspiracy without any reference to [the agent's] improper testimony." *Id.* And the defendant "easily could have avoided his current predicament by making specific objections to put the trial court on notice of any problematic testimony, as one regularly does during a trial, and thereby afford the court an opportunity to correct any error in a timely fashion." *Id.* This Court concluded, "As we see it, the public's view of the judicial process is served best in this case by recognizing the strength of the evidence before us and upholding the jury's verdict." *Id.* So too here.

In sum, Mares has not shown that the district court erred by allowing this testimony. But, even if he had, he has not satisfied his burden on the remaining prongs of plain-error review. Thus, Agent Cain's unobjected-to testimony does not require a new trial.

## IV. Mares's trial counsel did not provide ineffective assistance by not objecting to admissible evidence, but, if that evidence was not admissible, Mares's ineffective-assistance claim is not ripe for review.

Mares has not shown that his counsel below provided ineffective

21

assistance. He argues that his trial counsel performed deficiently by not objecting to Agent Cain's redirect testimony discussed above. *See* Mares's brief at 53–54. But as explained above, that testimony was admissible, so Mares's ineffective-assistance claim fails. *See Lovett v. State of Fla.*, 627 F.2d 706, 709 (5th Cir. 1980) ("[T]he failure to object to admissible evidence does not constitute ineffective assistance of counsel.").

But if this Court decides that Agent Cain's testimony was not admissible, then Mares's ineffective-assistance claim is not ripe for review. This Court "will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *Bender*, 290 F.3d at 1284. Here, the district court did not entertain the claim Mares raises on appeal and did not develop a factual record on it.

And the record is not otherwise sufficiently developed. We don't know why defense counsel did not object. *See Devier v. Zant*, 3 F.3d 1445, 1454 (11th Cir. 1993) (defense counsel's failure to object is not ineffective assistance if it is based on reasonable strategic choice). Mares asserts that "there is no tactical or strategic reason not to object, or move for a mistrial," Mares's brief at 53, but that's not so. Rather, for the reasons discussed above, it appears that defense counsel opened the door to this line of questioning to support his overall

argument that the United States was looking for a "fall guy," because it could not prosecute Mares. So, at the very least, a factual record must be developed before this Court reaches the merits of Mares ineffective-assistance claim. *See United States v. Toyer*, 274 F. App'x 844, 848 (11th Cir. 2008) (because record contains no evidence indicating why counsel failed to object, record was not sufficiently developed for this Court to consider defendant's ineffective-assistance claims).

## Conclusion

The United States requests that this Court affirm the district court court's judgment.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

By:  *s/ Holly L. Gershow*
HOLLY L. GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division
Florida Bar No. 98960
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
holly.gershow@usdoj.gov

23

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 5246 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that on May 15, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

RAY C. LOPEZ, ESQ.
*Counsel for Javier Mares*

*s/ Holly L. Gershow*
HOLLY L. GERSHOW
Assistant United States Attorney

Gkpr/no/4-21-26

*Mares, Javier US response brief final 2083-8592-6149 v.1.docx*